J-A04029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LATOYA JACKSON, | : | |
| | : | |
| Appellant. | : | No. 954 EDA 2018 |

Appeal from the Judgment of Sentence, March 16, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0003297-2017.

BEFORE: LAZARUS, J., KUNSELMAN, J., and COLINS*, J.

MEMORANDUM BY KUNSELMAN, J.:         **FILED MAY 10, 2019**

Latoya Jackson (Appellant) appeals from the order designating her a Tier III sex offender pursuant to the Pennsylvania Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.10 – 9799.41. The court sentenced Jackson under SORNA for crimes she committed prior to SORNA's effective date. The challenge she presents is whether the sentence constitutes a violation of the *ex post facto* clauses of the state and federal constitutions. After careful consideration, we vacate the order and remand to the trial court for further proceedings consistent with this decision.

The trial court aptly summarized the relevant factual history as follows:

> From 2005 to 2008, [Jackson] would occasionally babysit her half-sisters K.Q. and T.Q. On one such occasion, [Jackson] was approximately fifteen or sixteen years old, K.Q. was six or seven years old, and T.Q. was approximately eleven or twelve years old. On that occasion, [Jackson]

_____

* Retired Senior Judge assigned to the Superior Court.

forced K.Q. and T.Q. to perform oral sex on one another and on [Jackson], in their mother's room of the family home in Philadelphia, Pennsylvania. [Jackson] gave specific instructions to K.Q. and T.Q. on what to do. K.Q.'s tongue penetrated [Jackson's] vagina. [Jackson] also performed oral sex on K.Q. and T.Q.

On another day when [Jackson] was left in charge of her siblings, she encouraged K.Q., who was six or seven years old, to have sex with "Sammy," a visiting neighbor who was six, seven, or eight years old. [Jackson] placed K.Q. and "Sammy" in the middle of the room of the same family home, shut the door, and told them that they could not leave the room until they had sex.

On yet another day, in the same family home in the rear room, [Jackson] forced T.Q. to have sex with an unknown male aged 17 or 18, and forced K.Q. to observe. K.Q. was six or seven years old at the time. [Jackson] also simultaneously orchestrated a series of events where an unknown male, aged 17 or 18, was laying on the floor between [Jackson] and K.Q., who were also on the floor. [Jackson] took K.Q.'s hand and made her touch the male's genitals inside of his pants, with skin-to-skin contact.

On January 19, 2018, after a waiver trial, [Jackson] was found guilty of Rape of a Child[1], Indecent Exposure[2], Indecent Assault of a Person Less Than 13[3], Incest[4], and Unlawful Contact with a Minor[5].

Trial Court Opinion, 7/30/18, at 1-2 (citations to the record omitted).

Jackson does not appeal the convictions, nor her two to four year term of incarceration. She only appeals the registration and reporting aspects of her sentence. Although the court determined Jackson was not a "sexually

---

[1] 18 Pa.C.S.A. § 3121(c)
[2] 18 Pa.C.S.A. § 3127(a)
[3] 18 Pa.C.S.A. § 3126(a)(7)
[4] 18 Pa.C.S.A. § 4302(a)
[5] 18 Pa.C.S.A. § 6318(a)(1)

violent predator," the court deemed Jackson a Tier III sex offender and ordered her to comply with all Tier III requirements, including lifetime registration.

In her timely appeal, Jackson raises the following issues, which we reorder for ease of disposition:

1. Whether 42 Pa.C.S.A. § 6302 as applied to Jackson violates the *ex post facto* clause of the Pennsylvania and United States Constitutions in that the definition of "child" has the effect of authorizing the trial court to impose greater penalties now than could have been imposed at the time of the offenses were committed?

2. Whether the judgment of sentence is illegal insomuch as there was no statutory authority for the court to impose lifetime reporting pursuant to SORNA?

3. Whether the court erred in imposing lifetime reporting insomuch as the current version of SORNA is an *ex post facto* law as applied to Jackson and criminal acts that occurred on unknown dates that were indisputably prior to the statute's enactment?

*See* Jackson's Brief at 7.

These issues present questions of law; our standard of review is *de novo* and our scope is plenary. **Commonwealth v. Lee**, 935 A.2d 865, 876 (Pa. 2007).

We begin with Jackson's argument that, because she could have been tried as a juvenile (had the authorities been immediately aware of her crimes), the Commonwealth's prosecution of Jackson – as an adult – violates the *ex post facto* clause of both the state and federal constitutions. **See** Jackson's Brief at 18. She reasons that her adult prosecution equates the authorization

of greater punishment than she would have otherwise received if a juvenile court adjudicated her delinquent when she was a minor. **See, e.g., Commonwealth v. Rose**, 127 A.3d 794, 798 (Pa. 2015) (holding that an *ex post facto* law is, *inter alia*, one that inflicts greater punishment than the law annexed to the crime when committed.) Although the difference between the two adjudications is disparate, the Commonwealth's criminal prosecution of Jackson did not constitute an *ex post facto* application.

For one thing, Jackson seems certain that she would have only faced delinquency charges in juvenile court had she been prosecuted at the time of her crimes. This is not necessarily so. Jackson concedes that she was 17 at the time of her last offending act. Even though Jackson would have likely began her case in juvenile court, the Commonwealth could have certified the matter and pursued her transfer to criminal court under 42 Pa.C.S.A. § 6355 ("Transfer to criminal proceedings"). In other words, the result could have been the same. It is simply not the case that Jackson faced greater punishment now than she otherwise would have faced been had she been immediately charged.

Perhaps more to the point, this case presents facts similar to those in **Commonwealth v. Monaco**, 869 A.2d 1026 (Pa. Super. 2005), *appeal denied,* 880 A.2d 1338 (Pa. 2005). In **Monaco**, the defendant was a minor when he perpetrated sex crimes against three victims, also minors, over a series of years. **Monaco**, 869 A.2d at 1027-1028. The defendant was not charged until several years later, when he was 22. The defendant claimed

- 4 -

that the trial court lacked jurisdiction over him because he was a minor when he committed the offenses; he argued that his case should have been transferred to juvenile court pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.* ***See id.*** at 1028 (footnote omitted).

This Court stated that the right to be treated as a juvenile offender is statutory rather than constitutional. ***Id.*** at 1029 (citing ***Commonwealth v. Cotto***, 753 A.2d (Pa. 2000)). We explained that the Juvenile Act expressly affords protections to a child, which it defines in pertinent part as an individual who "is under the age of 21 years who committed an act of delinquency before reaching the age of 18 years." ***Id.*** (quoting 42 Pa.C.S.A. § 6302). The Juvenile Act is tailored to a child's special needs, the purpose of the Act cannot be extended to adult offenders. ***Id.*** at 1030; ***see also Commonwealth v. Iafrate***, 594 A.2d 293 (Pa. 1991). We ruled the Commonwealth may pursue adult charges against an individual who committed the offenses as a minor, so long as there was no improper motivation for the delay. ***Id.***; ***see also Commonwealth v. Anderson***, 630 A.2d 47, 50 (Pa. Super. 1993).

Instantly, Jackson does not contend that the Commonwealth improperly waited until she was an adult to level charges against her. Here, the delayed charges merely followed the delayed disclosure. Instead, Jackson attempts to distinguish her case by arguing that, although ***Monaco*** and ***Anderson*** considered the constitutional implications of charging defendants as adults for crimes they committed as minors, those cases did not specifically consider the implication of the *ex post facto* clause. ***See*** Jackson's Brief at 19.

Even so, it is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except of course, in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court. **See Commonwealth v. Postie**, 200 A.3d 1015 (Pa. Super. 2018) (*en banc*) (citing **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006)), *appeal denied*, 946 A.2d 686 (Pa. 2008). Jackson does not allege any intervening authority, and we discern none. Jackson's first argument fails.

Next, Jackson puts forth separate argument why her sentence constitutes an *ex post facto* violation. She contends that because she committed her offenses prior to SORNA's effective date (December 20, 2012), the court's application of SORNA to her sentence is a violation of the *ex post facto* clauses under both the state and federal constitutions. **See** Jackson's Brief, at 11. On this point, we agree.

"The Pennsylvania General Assembly passed SORNA as Act 111 of 2011, signed December 20, 2011. In so doing, it provided for the expiration of prior registration requirements, commonly referred to as Megan's Law, 42 Pa.C.S.A. §§ 9791 – 9799.9, as of December 20, 2012, and for the effectiveness of SORNA on the same date." **In re J.B.**, 107 A.3d a, 3 (Pa. 2014). SORNA classifies sex offenders into three tiers. Those convicted of Tier III offenses are subject to lifetime registration and are required to verify their registration information and be photographed, in person at an approved registration site, quarterly. **See** 42 PA.C.S.A. § 9799.15(a)(3), (e)(3).

In a recent plurality decision, our Supreme Court concluded that SORNA retroactive application of the registration and reporting requirements of SORNA violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions. ***See Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017). An *en banc* panel of this Court recently addressed the intricacies of the ***Muniz*** holding. ***See Commonwealth v. Lippincott***, -- A.3d --, 2019 PA Super 118 (Pa. Super. April 15, 2019). There, we explained:

> In ***Muniz***, our Supreme Court in a plurality decision explained that the *ex post facto* clauses of both the United States and Pennsylvania Constitutions ensure "that individuals are entitled to fair warning about what constitutes criminal conduct, and what the punishments for that conduct entail." ***Muniz***, 164 A.3d at 1195 (citations omitted). "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." ***Id.*** (quoting ***Weaver v. Graham***, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)).
>
> ***Muniz*** identified the four types of laws that deny the protections that the *ex post facto* prohibitions seek to afford: (1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action; (2) Every law that aggravates a crime, or makes it greater than it was, when committed; (3) **Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed**; and (4) Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender. ***Muniz***, 164 A.3d at 1195 (citing ***Calder v. Bull***, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (emphasis added). The Court explained that laws that fall within any of the above four ***Calder*** designations and which

> disadvantage a defendant are *ex post facto* laws and constitutionally infirm. ***Id.*** at 1196.
>
> The Supreme Court in ***Muniz*** then addressed the constitutionality of SORNA. The Court concluded that SORNA violated *ex post facto* prohibitions under both the United States and Pennsylvania Constitutions. ***Id.*** at 1223. The ***Muniz*** Court reasoned that despite the legislature's designation of SORNA as a civil remedy, it was punitive in nature, and consequently, SORNA, as a criminal penalty, fell within the third ***Calder*** category (*i.e.*, application of the statute would inflict greater punishment than the law in effect at the time the defendant committed his crimes). ***Id.*** at 1196, 1218. Accordingly, the Supreme Court vacated the portion of the judgment of sentence that required the appellant to comply with SORNA. While ***Muniz*** is not a majority decision, the concurring opinion joins the Supreme Court's lead opinion to the extent it concludes that SORNA is punitive and that it was unconstitutional as applied to the appellant, in violation of both state and federal *ex post facto* prohibitions.

***Lippincott***, at *3-4 (footnote omitted) (emphasis in original).

The ***Lippincott*** court then concluded that its appellant's sentence was illegal under ***Muniz***. Jason Allen Lippincott committed his offenses prior to SORNA's effective date, but he pleaded guilty afterward and was sentenced under SORNA's Subchapter H. ***Id.***, at *5, 8. He argued that when he committed his offenses, he would have been subject to the previous Megan's Law, under which the lifetime registration and reporting requirements were less stringent. Lippincott was correct. While SORNA did not enhance the registration period for Lippincott's offense – he was still facing a lifetime registration – SORNA did augment the registration and reporting requirements for Tier III offenders, which included the addition of quarterly in-person reporting and the posting of personal information on the Pennsylvania State

Police website. *Id.* at *4. "As our Supreme Court pointed out in *Muniz*, these additional registration and reporting requirements constitute a greater punishment than what Megan's Law would have imposed, and consequently, their application violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions." *Id.* (Citation omitted). We remanded for resentencing.

In the case at bar, Jackson – like Lippincott – faced a lifetime registration under either statute. *Compare, e.g.,* 42 Pa.C.S.A. § 9795.1(b)(2) (expired) *with* 42 Pa.C.S.A. § 9799.14(d)(2). But also like Lippincott, Jackson was burdened with greater registration and reporting requirements under SORNA, and thus greater punishment, than she otherwise should have received. Consequently, Jackson's sentence constitutes an *ex post facto* violation. We observe that the trial court did not have the benefit of *Lippincott*, which we decided after the court issued its judgment of sentence. Nevertheless, the trial court made the same error here. We remand to the trial court to determine the appropriate registration and reporting requirements for Jackson.

Because Jackson's second issue is dispositive, we need not address her remaining issue. We recognize that the parties' briefs (including their reply brief and surreply brief) discuss the constitutionality of Act 10 generally and the applicability of Subchapter I specifically. Because the lower court sentenced Jackson under Subchapter H and not Subchapter I, we decline to

offer what would be tantamount to an advisory opinion.[6]  We also mindful that our Supreme Court recently granted review to determine the issue of whether Acts 10 and 29 are constitutional.  **See Commonwealth v. Lacombe**, 35 MAP 2018 (Pa. 2018).

Judgment of sentence affirmed.  Order vacated.  Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/19

---

[6] The order of sentence imposes on Jackson Subchapter H's Tier III requirements, which include quarterly reporting.  **Compare** 42 Pa.C.S.A. 9799.60 **with** 42 Pa.C.S.A. § 9799.15. Contrary to the Commonwealth's apparent position, Jackson was sentenced under Subchapter H, not Subchapter I.